UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUENTIN D. MCNEILL,

                       Plaintiff,

    v.

NANCY A. BERRYHILL,[1] Commissioner of
 Social Security,

                       Defendant.
_____

**REPORT
and
RECOMMENDATION**

**15-CV-00489T(F)**

APPEARANCES:            LAW OFFICES OF KENNETH A. HILLER
                                    Attorneys for Plaintiff
                                    TIMOTHY HILLER, of Counsel
                                    6000 Bailey Avenue
                                    Suite 1A
                                    Amherst, New York 14226

                                    JAMES P. KENNEDY
                                    ACTING UNITED STATES ATTORNEY
                                    Attorney for Defendant
                                    MARIA PIA FRAGASSI SANTANGELO
                                    Assistant United States Attorney, of Counsel
                                    Federal Center
                                    138 Delaware Avenue
                                    Buffalo, New York 14202, and

                                    AMANDA LOCKSHIN
                                    United States Social Security Administration
                                    Office of the General Counsel, of Counsel
                                    26 Federal Plaza
                                    Room 3904
                                    New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on December 10, 2015. (Doc. No. 11). On January 12, 2018, the matter was reassigned to Honorable Michael A. Telesca. (Doc. No. 14). The matter is presently before the court on motions for judgment on the pleadings, filed on December 9, 2015, by Plaintiff (Doc. No. 10), and on February 8, 2016, by Defendant (Doc. No. 12).

## BACKGROUND

Plaintiff Quentin McNeill ("Plaintiff" or "McNeill"), seeks review of Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability benefits") under, Title II and Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had a severe impairment of right arm gunshot wound (R. 19), but did not have an impairment or combination of impairments within the Act's definition of impairment. (R. 20).[2] Defendant further determined that Plaintiff had the residual functional capacity to perform the full range of light work. (R. 20). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on December 18, 2013. (R. 17-25).

## PROCEDURAL HISTORY

Plaintiff filed his application for disability benefits on February 1, 2012 (R. 224), alleging disability based on a head injury, spinal injury and right arm injury. (R. 168). Plaintiff's application was initially denied by Defendant, and pursuant to Plaintiff's

2

request filed on July 30, 2012 (R. 82-83), a hearing was held before Administrative Law Timothy J. Trost ("Trost" or "the ALJ"), on August 21, 2013, in Buffalo, New York. (R. 34-54). Plaintiff, represented by Kenneth Lore, Esq. ("Lore"), appeared and testified at the hearing. The ALJ's decision denying the claim was rendered on December 18, 2013. (R. 17-25).

Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on April 8, 2015. (R. 1-4).

This action followed on June 5, 2015, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Doc. No. 1).

On December 9, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Plaintiff's Memorandum"). On February 8, 2016, Defendant filed Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 12) ("Defendant's Memorandum"). On February 29, 2016, Plaintiff filed Plaintiff's Reply Memorandum of Law (Doc. No. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion for remand should be DENIED.

## **FACTS**[2]

Plaintiff was born on March 20, 1985, completed high school, lives with his three young children, and worked most recently as a telephone collection agent until February

---

[2] Taken from the pleadings and the administrative record.

28, 2009 (R. 168), when Plaintiff stopped working as a result of Plaintiff's impairments. (R. 168). Plaintiff alleges that he is not able to work because he suffers from head and spinal injuries as well as from a right arm gunshot wound injury. (R. 168).

Relative to the period of disability under review in this case, on September 4, 2011, Plaintiff was admitted to the emergency room at Erie County Medical Center ("ECMC"), in Buffalo, New York for a gunshot wound to Plaintiff's right arm. (R. 294). Thomas R. Duquin, M.D. ("Dr. Duquin"), completed open reduction and fixation surgery on fractures to Plaintiff's right arm ulna and radius, and noted upon discharge that Plaintiff should not bear any weight on Plaintiff's right arm for at least four to six weeks. (R. 292).

On September 16, 2011, Dr. Duquin completed a follow-up examination on Plaintiff and noted that Plaintiff reported continued right arm pain, and stiffness of his wrist and hand. (R. 357). Upon examination, Plaintiff exhibited 3/5 for grip strength, finger extension and abduction, good elbow range of motion ("ROM")[3] with flexion, and stiffness in Plaintiff's elbow during extension of 30 degrees, with 10 to 15 degrees of supination (rotation of forearm) and pronation in each direction with discomfort and pain. Dr. Duquin attached a long arm cast to Plaintiff's right arm, and instructed Plaintiff to keep his arm elevated. (R. 357). During a follow-up examination with Dr. Duquin on October 6, 2011, Plaintiff reported improved pain with discomfort, and no weakness or motor deficits. Upon examination, Dr. Duquin evaluated Plaintiff with good ROM of

---

[3] Normal elbow ROM for males between the age of 20 and 44 is established as 0 degrees upon extension and 145 degrees upon flexion, with normal forearm pronation measured at 76.9 degrees and supination measured at 85 degrees. See http//www.cdc.gov/ncbddd/jointROM/ (last visited on Dec. 27, 2017).

4

Plaintiff's elbow, wrist and hand, limited supination of 15 degrees and pronation measured at 45 degrees, intact radial and ulnar nerve function, decreased strength in relation to forearm pain, intact sensation to touch, with decreased sensation, and tingling and paresthesias (numbness) in Plaintiff's radial nerve distribution. (R. 359).

On October 31, 2011, Plaintiff returned to Dr. Duquin for a follow-up examination and reported decreased swelling and improved ROM. Dr. Duquin reviewed an X-ray completed the same day that revealed a well-aligned surgical repair to Plaintiff's radius and ulna with healing, persistent defect of both fractures, with no evidence of loose hardware, and evaluated Plaintiff with ROM measured at 30 degrees upon extension and 130 degrees upon flexion, supination measured at 50 degrees, with pronation measured at 70- degrees, good ROM of Plaintiff's wrist and hand and intact sensation to touch. (R. 361). Dr. Duquin instructed Plaintiff to avoid lifting more than 1 pound with his right arm, and instructed Plaintiff to continue his prescribed ROM exercises, and avoid using his arm. *Id.*

On November 11, 2011, Dr. Duquin noted that Plaintiff reported increased pain upon rolling his arm and that Plaintiff reported a "clicking" sound when Plaintiff rolled onto his arm while sleeping with increased pain. An X-ray taken the same day showed no displacement to Plaintiff's fracture repair. (R. 363).

On December 2, 2011, Dr. Duquin noted that Plaintiff reported that he was completing his ROM exercises, and that Plaintiff denied numbness, tingling, and neurologic deficits. Upon examination, Dr. Duquin evaluated Plaintiff with elbow extension measured at 10 degrees, flexion measured at 135 degrees, and pronation at 70 degrees with intact sensation. (R. 364). Dr. Duquin noted that although Plaintiff's

5

radius was healing well, Plaintiff's ulna showed signs of non-union of the ulnar shaft with persistent defect with no evidence of significant interposing bone, and recommended that Plaintiff undergo bone grafting surgery within two to three months time.  *Id.*

On March 7, 2012, Plaintiff underwent iliac bone graft surgery of Plaintiff's ulna to correct the non-union from Plaintiff's September 4, 2011 surgery.  (R. 367).  An X-ray of Plaintiff's right forearm on March 16, 2012, showed multiple fragments of bullets projected over Plaintiff's distal radius, ulna and soft tissue.  (R. 354).  During a follow-up examination on March 16, 2012, Dr. Duquin noted that Plaintiff reported continued pain, and that Plaintiff's X-rays showed a well-aligned plate and bone graft.  (R. 367).

On April 11, 2012, an X-ray of Plaintiff's right arm showed progress of bony union of Plaintiff's fracture and evidence of gunshot shrapnel.  (R. 283).

On April 11, 2012, John West, M.D. ("Dr. West"), completed a follow-up evaluation on Plaintiff under the supervision of Dr. Duquin, noting that Plaintiff reported significant pain improved from the pervious visit, and evaluated Plaintiff with full ROM of his right elbow.  (R. 368).

On May 23, 2012, Donna Miller, D.O. ("Dr. Miller"), a family medicine practitioner, completed an internal medical examination on Plaintiff on behalf of the Social Security Administration, and noted that Plaintiff reported right arm pain that rated 10 of 10 on a ten-point scale, and that Plaintiff was using a cane for weight bearing and balance.  (R. 321).  Dr. Miller assessed Plaintiff with cervical spine extension and flexion measured at 30 degrees, lumbar flexion measured at 30 degrees with 5 degrees upon extension, and 20 degrees bilaterally upon lateral extension, noting that Plaintiff declined ROM evaluation of his right elbow, shoulder and wrist as a result of his recent surgery (R.

6

322), diagnosed Plaintiff with chronic low back pain, right hip pain, and right upper extremity pain status post gunshot wound with surgery, and evaluated Plaintiff with moderate limitation for repetitive heavy lifting, pushing, pulling, and carrying with his right upper extremity, observing that Plaintiff recently underwent surgery and had not begun physical therapy. (R. 323).

On November 21, 2012, Seung Park, M.D. ("Dr. Park"), completed a consultative review of Plaintiff's medical records on behalf of the Social Security Administration, and opined that there was insufficient evidence to evaluate Plaintiff, but agreed with Dr. Miller's residual functional assessment of Plaintiff. (R. 338).

On July 31, 2013, Plaintiff visited UB Family Medicine in Buffalo, New York, where Fadie Amin, M.D. ("Dr. Amin") completed a new patient physical examination on Plaintiff and opined that Plaintiff reported a lesion on his right forearm and no joint pain. Upon examination, Dr. Amin evaluated Plaintiff with normal ROM and gait and station. (R. 351).

On August 14, 2013 (R. 371-72), August 29, 2013 (R. 380), and August 30, 2013 (R. 395), Plaintiff sought treatment from ECMC for right arm pain, and was prescribed Lortab and Motrin.

On August 20, 2013, Lawrence G. Rand, M.D. ("Dr. Rand"), reviewed an X-ray and opined a screw head protruded from Plaintiff's forearm four millimeters from Plaintiff's ulnar cortex, leading Dr. Rand to suspect that an ulnar screw from Plaintiff's previous surgery had dislodged into Plaintiff's right arm. (R. 401).

7

## **DISCUSSION**

1.  **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.  **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations, and lasts or is expected to last at least 12 months, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

10

perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.  *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

### B.   Substantial Gainful Activity

The first inquiry is whether the applicant engaged in substantial gainful activity.  "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).  Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity.  20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2011, the date of Plaintiff's alleged onset of disability.  (R. 19).  Plaintiff does not contest this finding.

### C.   Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the

duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairment of right arm gunshot wound as defined under 20 C.F.R. § 404.1520(c).  Plaintiff does not contest this finding, or the ALJ's finding that Plaintiff's right arm impairment does not meet any of the listed impairments under step three of the disability review analysis.

<u>Residual functional capacity</u>

In this case, the ALJ found that Plaintiff had the residual functional capacity to complete the full range of light work at all exertional levels.  (R. 20).

"Light work" involves

Lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling arm and leg controls.  To be able to be considered capable of performing light work, [an individual] must be capable of performing substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

12

Plaintiff contends that the ALJ erred by affording too much weight to Dr. Miller's residual functional capacity assessment of Plaintiff.  Plaintiff's Memorandum at 13.  In particular, Plaintiff contends that Dr. Miller's finding that Plaintiff had a moderate limitation to repetitive heavy lifting, pushing, pulling, and carrying with Plaintiff's right extremity, was too vague for the ALJ to rely on to establish Plaintiff's residual functional capacity assessment, relying on the rulings in *Selian v. Astrue* ("*Selian*") 708 F.3d 409, 421 (2d Cir. 2013), and *Curry v. Apfel* ("*Curry*", 209 F.3d 117, 123-24 (2d Cir. 2000). Plaintiff's Memorandum at 13-14.  Plaintiff further alleges that the ALJ should have developed the record with regard to limitations related to Plaintiff's right forearm. Plaintiff's Memorandum at 15-17.

Defendant maintains that Dr. Miller's findings are consistent with the findings of Dr. West on April 11, 2012, and that Plaintiff's reliance on *Selian* and *Curry* are misplaced as no evidence supports that Plaintiff had more than a moderate limitation to repetitive heavy lifting, pushing, pulling and carrying, and that Plaintiff's reliance on *Curry* is further misplaced as such ruling was adopted by regulation.  Defendant's Memorandum at 26-27.

In this this case, no error results from the ALJ's decision to afford more weight to Dr. Miller's opinion that Plaintiff had a moderate limitation to Plaintiff's right arm functioning.  Even if Plaintiff, a younger individual at the time of the ALJ's decision, with a high school education would be unable to perform light work as a result of Plaintiff's right arm impairment, Plaintiff would be able to perform sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  20 C.F.R. § 404.1567(a).

13

Although the sedentary job base may be eroded when an individual is unable to use his or her dominant hand, *see Calix v. Colvin*, 2016 WL 3003215, at * 18 (E.D.N.Y. May 23, 2016), Plaintiff has not provided the court with enough evidence to support that Plaintiff's inability to use his dominant right hand lasted for the required 12 month durational period, Discussion, *infra*, at 15.

A determination that Plaintiff is unable to perform light work does not require a finding of disability where the record supports a finding the Plaintiff can perform a full range of sedentary work and does not have limitations to factors such as loss of dexterity and the inability to sit for long periods of time. 20 C.F.R. § 404.1567(a). Furthermore, Plaintiff's ability to perform a full range of sedentary work, in light of Plaintiff's age, education and work experience requires finding that Plaintiff is not disabled under the Medical-Vocational Guidelines set forth under 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 201.27-29. Plaintiff's motion on this issue is therefore without merit.

The court also notes that Plaintiff has asserted a due process claim based on the ALJ's hostility and impermissible bias toward Plaintiff. Plaintiff's Memorandum at 9-11. Social security-related due process claims, however, have been held to apply only to specific matters of procedural insufficiency. *See Christopher v. Secretary of Health and Human* Services, 702 F. Supp. 41, 42 (N.D.N.Y. 1989) (improper notice of denial of benefits correctly asserted as a violation of fifth amendment right to due process), *see also Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) (social security evidentiary hearing not protected by due process clause).

Defendant maintains that the ALJ properly exercised discretion weighing inconsistent evidence in the record, that Plaintiff failed to provide evidence to fill a gap in the record for the period from March 2012 to August 2013, and that the ALJ's error in not considering Plaintiff's visits to Dr. Duquin on March 16, 2012, and Dr. West on April 11, 2012, does not arise to the standard for impermissible bias using the factors set forth under *Singletary v. Astrue* ("*Singletary*"), 2008 WL 132892, at *4 (W.D.N.Y. Jan. 22, 2008). Defendant's Memorandum at 15-17. Defendant's reliance on the ruling in *Singletary* is misplaced. The ruling set forth under *Singletary* addressed instances where a new ALJ should be required on remand. Plaintiff has not argued that remand for a new ALJ is necessary, and therefore the ruling under *Singletary* is not applicable here.

In this case, Plaintiff provided evidence to support Plaintiff's right arm impairment from Plaintiff's alleged onset date of disability on December 31, 2011, through April 11, 2012, the date that Dr. West evaluated Plaintiff after Plaintiff's second surgery on March 7, 2012. Under 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A), an individual is considered disabled if he or she is unable to engage in any substantial activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. Here, Plaintiff has not provided enough evidence to support that Plaintiff's right arm impairment lasted or was expected to last for a period greater than 12 months as is Plaintiff's burden. Plaintiff's motion for remand should therefore be denied and Defendant's motion on this ground should be granted.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 12) should be GRANTED; Plaintiff's motion (Doc. No. 10) should be DENIED. The Clerk of the Court should be instructed to close the file.

Respectfully submitted,

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO  
UNITED STATES MAGISTRATE JUDGE

DATED:	January 18, 2018  
		Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

                                                     */s/ Leslie G. Foschio*
                                      _____
                                          LESLIE G. FOSCHIO
                             UNITED STATES MAGISTRATE JUDGE

DATED:    January 18, 2018
                 Buffalo, New York